IN THE UNITED STATES DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| GERALD MALONE,<br>Petitioner,<br><br>v.<br><br>KATHLEEN M. DENNEHY,<br>Acting Commissioner of Massachusetts<br>Department of Corrections,<br>Respondent. | U.S. DIST. CT<br>MASSACHUSETTS<br><br>No._____<br><br>04 10283 RWZ |

## MEMORANDUM OF LAW IN SUPPORT OF GERALD MALONE'S PETITION FOR HABEAS CORPUS

### Statement of the Facts

No doubt existed at Gerald Malone's trial that he was a strict and, at times, a harsh disciplinarian at home. TR. V.I 172-173. He himself admitted to so much. TR. V.II 37. Both the alleged victim and her younger sister, Whitney Malone, testified that they feared their father as a strict disciplinarian. TR. V.I 172-173, 191, V.II 13. As to his guilt on the charges of sexual assault, however, all the jury had were allegations by Mr. Malone's daughter and vehement denials by him. TR. V.I 192-194, V.II 40-41.

The alleged victim reported the sexual assaults for the first time on the day Mr. Malone left his house following an argument with her mother. TR. V.I 197-198. Specifically, the alleged victim claimed that on several occasions her father, Gerald Malone, sexually assaulted and raped her. TR. V.I 192-194. The only physical evidence introduced by the Commonwealth to corroborate her claim consisted of three pornographic tapes obtained from the family residence. TR. V.II 92-93. With no other physical or scientific evidence to support the claim, the

Commonwealth's case obviously rested solely on the credibility of the alleged victim. TR. V.II 90-91, 111-112.

At trial, the defense attorney argued that the alleged victim's animosity towards her father and her desire to prevent him from ever returning to the house, motivated her to fabricate the allegations of sexual assault. TR. V.I 109-110, V.II 94-96. At a pre-trial hearing, the trial judge limited the number of the Commonwealth's fresh complaint witnesses to only one. TR. V.I 9. The Commonwealth had listed several potential fresh complaint witnesses, including Officer Cheryl Nugent Gomsey. A. 25-26, TR. V.II. 73-75. Officer Gomsey had prepared a report that contained statements made by the alleged victim in the presence of a social worker. Appendix (hereinafter "A") 6-10.

The Commonwealth's first witness, the alleged victim, testified to various sexual and physical assaults allegedly committed by Mr. Malone. TR. V.I 192-194. On cross-examination, the defense attorney focused on numerous inconsistencies between the alleged victim's direct testimony and the statements she had made to Officer Gomsey, as recorded in an official police report. A. 11-24, TR. V.I, 182-187.

When confronted with the inconsistent statements, the alleged victim denied making the statements altogether or significantly contradicted the report.[1] TR. V.I 182-189. The Commonwealth subsequently revealed that their second witness, the alleged victim's mother, would be the fresh complaint witness. TR. V.I 203. The court then adjourned for the day at the conclusion of the mother's testimony. TR. V.I 234-236.

---

[1] The inconsistencies between the alleged victim's direct testimony and her statement to Officer Gomsey are outlined in the argument part of this memorandum. *Infra* pp. 6-8.

2

The following morning, the defense attorney requested a short continuance to serve Officer Gomsey with a subpoena to appear before the court as a defense witness. A. 35-37, TR. V.II 3-5. He stated that he had expected the Commonwealth to call Officer Gomsey as a witness and therefore neglected to serve her with a subpoena. *Id*. The Commonwealth did not make an objection to the continuance. A. 36, TR. V.II 4. The court, however, refused to grant the continuance stating that it was obvious by the close of the evidence the previous day, that the Commonwealth would not call Officer Gomsey as a witness. A. 36, 40, TR. V.II 4, 26. The trial judge pointed out that the court had limited the Commonwealth to one fresh complaint witness, and the Commonwealth chose to call the mother as one.[2] *Id*. The Defense attorney renewed his request at the conclusion of the Commonwealth's case. A. 40, TR. V.II. 26. The judge denied the request for a brief continuance. *Id*.

Having lost the opportunity to present the inconsistent statements contained in Officer Gomsey's report, the defense attorney closed his case after calling Mr. Malone to testify on his own behalf and presenting Mr. Malone's mother's testimony. TR. V.II 98. Mr. Malone testified as to his innocence and denied all of the allegations of sexual assault brought against him by the alleged victim. TR. V.II 40-41.

At the conclusion of the evidentiary proceedings, the defense attorney made an offer of proof as to the evidence he would have presented had the court granted him a continuance to compel the appearance of Officer Gomsey.[3] A. 25-34, TR. V.II 74-83. The defense attorney

---

[2] The defense lawyer also did not ask that the Commonwealth make the witness available to him in the event that they would not call her, as pointed out by the trial judge at the close of the evidentiary portion of trial on day two, prior to closing arguments of counsel. A. 34.

[3] Prior to making his offer of proof, the defense lawyer stated We're setting Mr. Malone up for an ineffective assistance of counsel claim, that I made a mistake, which obviously I did. I saw them on the witness list. So I made a mistake so it's certainly setting up that I was

3

admitted his fateful mistake and read from Officer Gomsey's report focusing on the prior inconsistent statements with which he sought to impeach the alleged victim. A. 25-34, TR. V.II 74-83.

## ARGUMENT

I. THE DEFENSE COUNSEL'S FAILURE TO SUBPOENA A KEY WITNESS, OFFICER GOMSEY, VIOLATED MR. MALONE'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

The Court must reverse the conviction against Mr. Malone because he received ineffective assistance of counsel at his trial. Specifically, the defense counsel's failure to subpoena Officer Gomsey, the only available witness capable of undermining the alleged victim's testimony, violated Mr. Malone's right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. The conduct of Mr. Malone's counsel fell measurably below that which might be expected from an ordinary fallible lawyer. An "ordinary fallible lawyer" would have known by the afternoon of the first day of the trial that if the court granted the Commonwealth one fresh complaint witness, and the alleged victim's mother was named as that witness, Officer Gomsey would not be called by the prosecution to testify.

Mr. Malone's counsel performed below the standard guaranteed by the Federal constitution. The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall... have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court observed that the existence of a right to *effective* counsel logically follows from the right to the assistance of counsel under the Sixth Amendment to the

---

ineffective." TR. V.II. 73-75, A. 25-26.

4

federal Constitution. The Court had stated, "[I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

The U.S. Supreme Court reiterated the same point in a later case:

> "Assistance begins with the appointment of counsel, it does not end there. In some cases the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided. Clearly, in such cases, the defendant's Sixth Amendment right to 'have Assistance of Counsel' is denied."

*U.S. v. Cronic*, 466 U.S. 648, 654 n.11, (*quoting U.S. v. Decoster* 624 F.2d 196, 219 (D.C. Cir.))(MacKinnon, J., concurring), *cert. denied*, 444 U.S. 944 (1979).

The federal test for assessing the existence of ineffective assistance of counsel requires defendants to establish that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In effect, the claimant must show that counsel's errors were so serious as to deprive her of a fair trial and that the counsel's representation fell below an objective standard of reasonableness. *Id.* at 688.

Under the federal test, Mr. Malone's attorney's failure to present the numerous prior inconsistent statements of the alleged victim establishes ineffective assistance of counsel. Specifically, his failure to subpoena Officer Gomsey demonstrates a case of inattention and incompetency. The inattention is particularly inexcusable and very costly in a case the outcome of which depended on the credibility of the alleged victim. Counsel's failure to present the prior inconsistent statements made by the alleged victim crippled his ability to impeach her credibility. Officer Gomsey, as the sole witness capable of discrediting the alleged victim's testimony, could

5

have presented the defense with an indispensable weapon in Mr. Malone's defense. Clearly, it was a weapon an ordinary fallible lawyer would have used.

Officer Gomsey had prepared a detailed report of her interview with the alleged victim. The report revealed that the alleged victim's trial testimony was markedly different from her statement to Officer Gomsey. Mr. Malone's attorney intended to introduce the following inconsistencies between the alleged victim's direct testimony and her statement to officer Gomsey:

| | |
|---|---|
| Trial Testimony: | The alleged victim testified that during one assault, which occurred during the time she lived in her Uncle Tony's house, the defendant was naked. A. 15-16, TR. V.I 172-173. |
| Police Report: | The alleged victim told Officer Gomsey that, during the assault, the Defendant was clothed. On cross-examination, the alleged victim disagreed with the police report (which had been given to her to read), stating that she had told Officer Gomsey that he was not clothed during this incident. A. 7. |
| Trial Testimony: | The alleged victim denied that she had reported that Uncle Tony came home during an attack A. 20-21, TR. V.I 175-177. |
| Police Report: | The alleged victim told Officer Gomsey that Uncle Tony came home while the Defendant was hitting her for biting him while performing fellatio. A. 10. |
| Trial Testimony | The alleged victim denied she had ever reported to police that, during one of the incidents, the Defendant choked her and ripped off her clothes. A. 21, TR. V.I 177. |
| Police Report: | Officer Gomsey reported that the alleged victim had told her that, during the alleged incident that took place when Uncle Tony came home, the defendant choked her, 'began to rip (her) clothes off' and proceeded to have sexual intercourse with her. A. 9-10. |
| Police Report: | Officer Gomsey reported that the victim had stated that in September or October of 1998, her school had called home to |

6

|  |  |
|---|---|
|  | inform her family that she had a detention. At the same time as this detention, the alleged victim stated that she had received a poor progress report. She claimed that because of the detention and the progress report, her father had said to her that she could "redeem herself" by performing fellatio. A. 9-10. |
| Trial Testimony: | On cross-examination, the alleged victim denied that the detention and bad progress report had occurred during the same time period. A. 20, TR. V.I 176. |
| Trial Testimony: | The alleged victim stated that there was a pornographic tape played during the first incident of assault, and that she reported that to the police. A. 33, TR. V.I 116, V.II 82. |
| Police Report: | This detail was not included in the police report. A. 6-10. |
| Trial Testimony: | The alleged victim testified that in 1998, on either Christmas day or the day after, she was sexually assaulted by Mr. Malone. A. 11-15, TR. V.I 167-171. |
| Police Report: | The alleged victim told Officer Gomsey that only some physical hitting took place on that date. A. 9. |
| Trial Testimony: | The alleged victim testified that Mr. Malone gave her his pager for one day of silence and his cellular phone for three weeks of silence. TR. V.I 182; *See also* A. 32-33. |
| Police Report: | The allege victim told Officer Gomsey that Mr. Malone promised her the pager for one week of silence, and the cellular phone for three months of silence. A. 8. |
| Trial Testimony: | The alleged victim testified that Mr. Malone had offered to give her $3000 for her silence. TR. V.I 182-183; *See also* A. 32-33. |
| Police Report: | Officer Gomsey's report did not make any mention of a promise to give money to the alleged victim. A. 6-10. |
| Trial Testimony: | The alleged victim testified that she was sexually assaulted by Mr. Malone in exchange for getting a ride in a limousine for her birthday. TR. V.I 119; *See also* A. 33. |
| Police Report: | Officer Gomsey's report did not make any mention of a limousine being involved in any of the alleged incidents. A. 6-10. |

7

| | |
|---|---|
| Trial Testimony: | The alleged victim testified that Mr. Malone had threatened her after the first assault. A. 23-24, TR. V.I 186-187. |
| Police Report: | Officer Gomsey's report did not make any mention of a thereat allegedly made by Mr. Malone after the first assault. A. 6-10. (Appendix A: Officer Gomsey's Police Report) |

Obviously, the trial attorney intended to impeach the alleged victim by introducing the prior inconsistent statements through Officer Gomsey. Any ordinary fallible lawyer knows the only way to ensure a witness' presence at trial is by first serving the witness with a subpoena. The trial attorney in Mr. Malone's case did not do that—either before the trial began or by the end of the first day of trial. As soon as the Commonwealth made the defense counsel aware that their sole fresh complaint witness would be the alleged victim's mother, a fallible person (much less an ordinary fallible lawyer), would have logically determined that Officer Gomsey would not be the prosecution's fresh complaint witness. The trial court had already limited the Commonwealth to one fresh complaint witness. This fact in turn leads to the conclusion that the Commonwealth could not call Officer Gomsey as a witness as she did not perceive the alleged incidents and could have only testified as to hearsay under the fresh complaint exception. Therefore, only the defense could have called her as a witness and for the limited purpose of impeaching the alleged victim with the prior inconsistent statements.

Moreover, by the end of the first day of trial, defense counsel had knowledge of the crucial benefit of calling Officer Gomsey as a witness. He knew of the inconsistency between the alleged victim's testimony at trial and her statement to Officer Gomsey. By the defense lawyer's own admission, the failure to call Officer Gomsey did not result from a strategic consideration. To the contrary, the defense counsel's strategy included calling Officer Gomsey to impeach the alleged victim by introducing the prior inconsistent statements. He spent

significant time in his cross-examination focusing on the inconsistencies. The alleged victim denied making several of the statements in Officer Gomsey's report on cross-examination. Calling Officer Gomsey to testify remained the only way that the defense counsel could accomplish his impeachment of the alleged victim. In order to do that, he would have to serve Officer Gomsey with a subpoena. And that he did not do. In short, the defense counsel's inattention fell measurably below that which the Court would consider reasonable using an objective standard of reasonableness.

The defense counsel's serious inattention and incompetency in failing to serve Officer Gomsey with a subpoena by the end of the first day of trial meets the federal standards under *Strickland*. First, the oversight clearly demonstrates the deficiency of the defense counsel's performance. The defense counsel himself admitted in his offer of proof and request for a continuance that calling Officer Gomsey as a witness was part of his defense strategy. He meant to present her testimony but took it for granted that she would be waiting around to testify for the prosecution. Not only it was deficient performance to leave the availability of a witness to chance, defense counsel's hope that Officer Gomsey would be available without any effort on his part was manifestly unreasonable considering the trial judge's ruling and the proceeding of the first day.

Second, the defense counsel's deficient performance has adversely prejudiced Mr. Malone, denying him a fair trial. The outcome of the trial might have well been different had the defense lawyer presented the prior inconsistent statements of the alleged victim through Officer Gomsey. The case essentially rested on the alleged victim's testimony, which the jury obviously credited. In doing so, the jury must have discredited Mr. Malone's denial of the allegations. Had the defense counsel introduced the prior inconsistent statements and undermined the credibility

of the alleged victim, he could have raised reasonable doubt as to Mr. Malone's guilt. Given the obvious inconsistencies between the alleged victim's trial testimony and statement to Officer Gomsey regarding various incidents and the requirement of unanimity, the jury could have decided to cling to the presumption of innocence.

By failing to secure the attendance of Officer Gomsey, the defense lawyer left the jury free to believe the alleged victim's unchallenged account. In addition, in his cross-examination of the alleged victim, the defense lawyer primed the jury to hear the inconsistent statements she had made to Officer Gomsey. The jury likely concluded he could not have fulfilled his promise when no such evidence surfaced by the close of all of the evidence. *See Harris v. Reed*, 894 F.2d 871 (7th Cir. 1990)(noting the importance of fulfilling a promise made in opening). The complete absence of corroborative physical, scientific, or eyewitness evidence magnifies the detrimental consequence of the failure to undermine the credibility of the alleged victim.

Furthermore, the defense attorney's failure to call Officer Gomsey, in and of itself, violated Mr. Malone's right to effective assistance of counsel. There was a reasonable probability that but for the defense counsel's unprofessional errors, the result of the proceeding would have been differentl. See *Pham v. United States,* 317 F.3d 178, 182 (2nd Cir. 2003); *McEwan v. United States*, 279 F. Supp. 2d, 462, 464, 465 (S.D. N.Y. 2003). Although in Mr. Malone's case the defense counsel intended to offer Officer Gomsey's testimony, his failure to subpoena her resulted in his inability to call her as a witness. Officer Gomsey was not only a key witness but also a necessary witness. Had Officer Gomsey testified, she could have substantially weakened the Commonwealth's case by exposing the alleged victims' prior inconsistent statements. Her testimony would have carried significant weight, as a police officer, she had no

motive to favor the defense. In short, the defense lawyer's conduct deprived Mr. Malone of his Sixth Amendment right to effective assistance of counsel.

II. THE COURT SHOULD GRANT MR. MALONE A NEW TRIAL BECAUSE THE COURT'S REFUSAL TO GRANT THE DEFENSE A SHORT CONTINUANCE TO SERVE OFFICER GOMSEY WITH A SUBPOENA VIOLATED MR. MALONE'S RIGHT TO COUNSEL AND DUE PROCESS

The Court denied Mr. Malone the right to counsel when it denied his attorney a brief continuance to have the opportunity to serve a necessary witness with a subpoena to compel her presence to testify on Mr. Malone's behalf. The Fifth Amendment to the United States Constitution guarantees the right to due process. U.S. Const. V. Counsel for the accused must be afforded the right to confer and consult with their client to present a defense. *Avery v. State of Alabama*, 308 U.S 444, 446 (1940).

While the granting of a continuance rests in the sound discretion of the trial judge, such discretion cannot be exercised in such a way as to impair the constitutional right to due process and to have counsel who has had reasonable opportunity to prepare a defense. *Avery*, 308 U.S. at 444; *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954). The Court cautioned a "myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. at 849.

In Mr. Malone's case, his attorney disclosed that he discovered the Commonwealth was not going to call Officer Gomsey and requested "time to have Officer Gomsey served" at the end of the Commonwealth's case. The judge refused to allow the defense attorney's request stating that it had become clear to him by the time the court adjourned the previous day that the Commonwealth was not going to call her as a witness. By so ruling, the court denied Mr.

11

Malone's attorney the opportunity to undermine the credibility of the only percipient witness who made allegations which were unsupported by any physical or scientific evidence. The decision handicapped counsel's attempt to defend successfully his client against the charges. The refusal to grant a brief continuance amounted to a "myopic insistence upon expeditiousness in the face of a justifiable request for delay" that rendered Mr. Malone's right to defend with counsel an empty formality in violation of his right to counsel and due process under the United States Constitution.

## Conclusion

For the forgoing reasons, the court should grant Mr. Malone a writ of habeas corpus

Respectfully submitted
Gerald Malone
By his attorney,

Derege B. Demissie
DOHERTY & DEMISSIE
494 Massachusetts Avenue, Suite 3
Cambridge, MA 02139
617-354-3944
BBO# 637544