IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GERALD MALONE,<br>Petitioner,<br><br>v.<br><br>KATHLEEN M. DENNEHY,<br>Acting Commissioner of Massachusetts<br>Department of Corrections,<br>Respondent. | No. 1:04-CV-10283-RWZ |

**DEFENDANT'S MOTION FOR ISSUANCE OF A
CERTIFICATE OF APPEALABILITY PURSUANT TO 28 U.S.C. § 2253(c)**

**PRELIMINARY STATEMENT**

Defendant Gerald Malone("Malone"), by his undersigned attorney, respectfully submits this Motion for Issuance of a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c). Malone seeks to appeal from a Judgment of the U.S. District Court (Hon. Rya W.. Zobel) dated and entered March 14, 2007, which dismissed his § 2255 Petition.

Based on the record before her, Judge Zobel ruled that the Petition lacked merit. As shown below, jurists of reason would find Judge Zobel's rulings debatable. This Court should issue a Certificate of Appealability ("COA").

## ISSUES FOR APPEAL

1. Whether the defense counsel's failure to subpoena a key witness prior to the closing of the evidentiary portion of the trial and present prior inconsistent statements of the alleged victim violated the Defendant's right to effective assistance of counsel.

2. Whether the trial court abused its discretion in violation the Defendant's right to counsel and due process in refusing to grant him a short continuance to serve a key witness with a subpoena to compel the witness' attendance at trial.

## BACKGROUND

1. On December 1, 2000, Mr. Malone was convicted, following a jury trial, of Rape of a Child and Indecent Assault and Battery on a Person under the Age of Fourteen. Mr. Malone received concurrent state prison sentences of nine to twelve years on the rape charge, and six to nine years on the indecent assault and battery charge. The Trial lasted for two (2) days. Attorney Daniel Bennett represented Mr. Malone.

2. The case involved an allegation of sexual assault by Mr. Malone's daughter, one Katherine Malone. There was no physical or scientific evidence presented to corroborate the allegations against Mr. Malone. As such, the Commonwealth's case rested on the credibility of Katherine Malone.

3. The defense's theory was that Katherine Malone had fabricated the allegations to get rid of her father, a strict disciplinarian who did not tolerate any transgression and often severely punished her and her sister using a belt. The defense attorney alluded to this theory in his opening statement and alerted the jury to listen carefully to the details of the testimony, as the truth lied therein.

4. On the first day of the trial, pursuant to a motion in limine, the judge limited the number of fresh complaint witnesses to only one. The Commonwealth had listed several witnesses including Officer Cheryl Nugent Gomsey in its list of potential witnesses. The Defense attorney had received a report prepared by Officer Gomsey that contained statements of the alleged victim made in the presence of the officer and a social worker.

5. The trial began on Thursday, November 30, 2000. The Commonwealth first called the alleged victim who testified to various sexual and physical attacks allegedly made by Mr. Malone. The defense attorney cross-examined the alleged victim focusing on

the inconsistencies between her direct testimony at trial and what she reported to Officer Gomsey. The alleged victim denied making the inconsistent statements. The alleged victim's mother then testified as to what her daughter had related to her on the day that Mr. Malone moved out of their residence. The Commonwealth then disclosed that the mother was their fresh complaint witness. The mother took the stand and testified as to what her daughter had related to her the day Mr. Malone moved out of the their residence. The defendant's attorney then cross-examined the mother and the court adjourned until the following day.

6. On the next day, the defense attorney stated that he had learned that the Commonwealth was not going to call any of the police officers on its witness list and requested a continuance at the end of the Commonwealth's case in chief to serve Officer Gomsey with a subpoena and call her as a defense witness.

7. The defense attorney also stated that he did not subpoena the officer assuming that the government would call her as a witness.

8. The court refused to grant the continuance and advised the defense attorney that he could attempt to locate the witness during a recess if he wished to do so.

9. The Commonwealth rested after presenting the testimony of the younger sister of the alleged victim. The sister did not witness any of the alleged assaults but nonetheless testified to tangential matters.

10. Mr. Malone testified on his own behalf and asserted his innocence and denied committing any of the sexual assaults.

11. The Defense attorney did not call Officer Gomsey to impeach the credibility of the alleged victim by presenting her prior inconsistent statements.

12. Officer Gomsey had interviewed the alleged victim twice and prepared a report for each interview.

13. At the conclusion of all of the evidence, the defense attorney made an offer of proof of what he would have presented had the court granted him a continuance to compel the attendance of Officer Gomsey.

14. The defense attorney had reason to know that the Commonwealth would not call Officer Gomsey, although they had her listed as a potential witness, as early as the afternoon of the first day of trial. The Commonwealth was allowed only one fresh complaint witness and the district attorney chose the mother to testify as such on the first day of trial.

15. After exhausting his state appellate remedies, Mr. Malone files a petition for a writ of habeas corpus with the United States District Court for the District of Massachusetts under 28 U.S.C. § 2241 and § 2254 arguing his conviction was obtained in violation

of his rights under the Sixth Amendment to the United States Constitution, which guarantees the right to effective counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Mr. Malone also raised due process calims under the Fifth and Fourteen Amendments to the United States Constitution.

16. The Court denied Mr. Malone's petition on March 14, 2007.

17. Mr. Malone filed a notice of appeal with the First Circuit on April 12, 2007. The Court transmitted the record to the First Circuit Court of Appeals on April 18, 2007 and the appeal was docketed by the First Circuit on April 20, 2007.

18. On June 19, 2007, the First Circuit directed Mr. Malone to file a request for a COA with the District Court and file a status report with the First Circuit.

## STANDARD FOR ISSUANCE OF A COA

A COA must issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). As set forth below, we have made the requisite showing.

## POINT ONE

### JURISTS OF REASON WOULD FIND DEBATABLE THE DISTRICT COURT'S RULING THAT MALONE HAD NOT SHOWN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL

The defense counsel's failure to subpoena a key witness, Officer Gomsey, violated Mr. Malone's constitutional right to effective assistance of counsel. Specifically, the defense counsel's failure to subpoena Officer Gomsey, the only available witness capable of undermining the alleged victim's testimony, violated Mr. Malone's right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. Mr. Malone's counsel performed below the standard guaranteed by the

State and Federal constitutions. The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall. . . have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court observed that the existence of a right to *effective* counsel logically follows from the right to the assistance of counsel under the Sixth Amendment to the federal Constitution. The Court had stated, "[I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

> "Assistance begins with the appointment of counsel, it does not end there. In some cases the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided. Clearly, in such cases, the defendant's Sixth Amendment right to 'have Assistance of Counsel' is denied."

The U.S. Supreme Court reiterated the same point in a later case:

*U.S. v. Cronic*, 466 U.S. 648, 654 n.11, (*quoting U.S. v. Decoster* 624 F.2d 196, 219 (D.C. Cir.))(MacKinnon, J., concurring), *cert. denied*, 444 U.S. 944 (1979).

The federal test for assessing the existence of ineffective assistance of counsel requires defendants to establish that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In effect, the claimant must show that counsel's errors were so serious as to deprive her of a fair trial. *Id.* The conduct of Mr. Malone's trial counsel was deficient. He failed to secure the presence of an indispensable witness who, as the trial counsel himself insisted, was necessary for his theory of defense. Instead of taking affirmative steps to secure her presence, the trial counsel relied on his assumption that the government would call her as a witness or make her available. The Defense Attorney

should also have known by the afternoon of the first day of the trial that if the court granted the Commonwealth one fresh complaint witness—and the alleged victim's mother was named as that witness—Officer Gomsey would not be called by the prosecution to testify.

Mr. Malone's attorney's failure to present the numerous prior inconsistent statements of the alleged victim establishes ineffective assistance of counsel. Specifically, his failure to subpoena Officer Gomsey demonstrates a case of inattention and incompetency. The inattention is particularly inexcusable and very costly in a case the outcome of which depended on the credibility of the alleged victim. Counsel's failure to present the prior inconsistent statements made by the alleged victim crippled his ability to impeach her credibility. Officer Gomsey, as the sole witness capable of discrediting the alleged victim's testimony, could have presented the defense with an indispensable weapon in Mr. Malone's defense. Clearly, it was a weapon he intended to use but failed to do so due to his failure to subpoena Officer' Gomsey.

In ruling against Ms. Malone's habeas corpus petition, the District Court pointed out that most of the points Mr. Malone's trial counsel attempted to raise were either acknowledged by the alleged victim or were admitted by the mother or her sister. While the Federal District Court identify one area where the Defense Counsel impeached the alleged victim with Officer Gomsey's report, the Court did not address the specific instances where the Defense Counsel could not have impeached the alleged victim because of his failure to call Officer Gomsey. Officer Gomsey's detailed report of her interview with the alleged victim was markedly different from the alleged victim's trial

testimony. Mr. Malone's attorney intended to introduce the following inconsistencies between the alleged victim's direct testimony and her statement to officer Gomsey:

**EXAMPLE ONE**:

| | |
|---|---|
| Trial Testimony: | The alleged victim testified that during one assault, which occurred during the time she lived in her Uncle Tony's house, the defendant was naked. A. 15-16, TR. V.I 172-173. |
| Police Report: | The alleged victim told Officer Gomsey that, during the assault, the Defendant was clothed. On cross-examination, the alleged victim disagreed with the police report (which had been given to her to read), stating that she had told Officer Gomsey that he was not clothed during this incident. A. 7. |

Without Officer Gomsey's testimony, Mr. Malone's attorney could not prove the inconsistency.

**EXAMPLE TWO:**

| | |
|---|---|
| Trial Testimony: | The alleged victim denied that she had reported that Uncle Tony came home during an attack A. 20-21, TR. V.I 175-177. |
| Police Report: | The alleged victim told Officer Gomsey that Uncle Tony came home while the Defendant was hitting her for biting him while performing fellatio. A. 10. |

Without Officer Gomsey's testimony, Mr. Malone's attorney could not prove the inconsistency.

**EXAMPLE THREE:**

| | |
|---|---|
| Trial Testimony | The alleged victim denied she had ever reported to police that, during one of the incidents, the Defendant choked her and ripped off her clothes. A. 21, TR. V.I 177. |

| | |
|---|---|
| Police Report: | Officer Gomsey reported that the alleged victim had told her that, during the alleged incident that took place when Uncle Tony came home, the defendant choked her, 'began to rip (her) clothes off' and proceeded to have sexual intercourse with her. A. 9-10. |

Without Officer Gomsey's testimony, Mr. Malone's attorney could not prove the inconsistency.

**EXAMPLE FOUR:**

| | |
|---|---|
| Police Report: | Officer Gomsey reported that the victim had stated that in September or October of 1998, her school had called home to inform her family that she had a detention. At the same time as this detention, the alleged victim stated that she had received a poor progress report. She claimed that because of the detention and the progress report, her father had said to her that she could "redeem herself" by performing fellatio. A. 9-10. |
| Trial Testimony: | On cross-examination, the alleged victim denied that the detention and bad progress report had occurred during the same time period. A. 20, TR. V.I 176. |

Without Officer Gomsey's testimony, Mr. Malone's attorney could not prove the inconsistency.

**EXAMPLE FIVE**

| | |
|---|---|
| Trial Testimony: | The alleged victim stated that there was a pornographic tape played during the first incident of assault, and that she reported that to the police. A. 33, TR. V.I 116, V.II 82. |
| Police Report: | This detail was not included in the police report. A. 6-10. |

Without Officer Gomsey's testimony, Mr. Malone's attorney could not prove the inconsistency.

**EXAMPLE SIX:**

| | |
|---|---|
| Trial Testimony: | The alleged victim testified that in 1998, on either Christmas day or the day after, she was sexually assaulted by Mr. Malone. A. 11-15, TR. V.I 167-171. |
| Police Report: | The alleged victim told Officer Gomsey that only some physical hitting took place on that date. A. 9.[1] |

**EXAMPLE SEVEN:**

| | |
|---|---|
| Trial Testimony: | The alleged victim testified that Mr. Malone had offered to give her $3000 for her silence. TR. V.I 182-183; *See also* A. 32-33. |
| Police Report: | Officer Gomsey's report did not make any mention of a promise to give money to the alleged victim. A. 6-10. |

Without Officer Gomsey's testimony, Mr. Malone's attorney could not prove the Inconsistency.

**EXAMPLE EIGHT:**

| | |
|---|---|
| Trial Testimony: | The alleged victim testified that she was sexually assaulted by Mr. Malone in exchange for getting a ride in a limousine for her birthday. TR. V.I 119; *See also* A. 33. |
| Police Report: | Officer Gomsey's report did not make any mention of a limousine being involved in any of the alleged incidents. A. 6-10. |

Without Officer Gomsey's testimony, Mr. Malone's attorney could not prove the

---

[1] Although the Federal District Court cited this inconsistency as an example of where the Defense Counsel successfully impeached the alleged victim with Officer Gomsey's report, the impeachment was not completed. In fact, when confronted with Officer Gomsey's report, the alleged vicitm's response was "I don't remember telling her that—I don't remember telling her it was the day after Christmass." To be fair, she did admit that she did not tell Gomsey about sexual assault.

Had Officer Gomsey's testified, the defense counsel could have inquired as to the detailed information she received regarding that date and exploited the inconsistency and vagueness of the alleged victim's trial testimony to buttress his theory of defense that the alleged victim fabricated the allegation of sexual assault to get rid of her strict and harsh disciplinarian father.

Inconsistency.

**EXAMPLE NINE:**

Trial Testimony: The alleged victim testified that Mr. Malone had threatened her after the first assault. A. 23-24, TR. V.I 186-187.

Police Report: Officer Gomsey's report did not make any mention of a thereat allegedly made by Mr. Malone after the first assault. A. 6-10.

Without Officer Gomsey's testimony, Mr. Malone's attorney could not prove the Inconsistency.

**EXAMPLE TEN:**

Trial Testimony: The alleged victim testified that Mr. Malone gave her his pager for one day of silence and his cellular phone for three weeks of silence. TR. V.I 182; *See also* A. 32-33.

Police Report: The allege victim told Officer Gomsey that Mr. Malone promised her the pager for one week of silence, and the cellular phone for three months of silence. A. 8.

Although this inconsistency seems minor, the cumulative effect of numerous seemingly minor inconsistencies is highly valuable to the Defense.

Obviously, the trial attorney intended to impeach the alleged victim by introducing the prior inconsistent statements through Officer Gomsey. The only way to ensure a witness' presence at trial is by first serving the witness with a subpoena. The trial attorney in Mr. Malone's case did not do that—either before the trial began or by the end of the first day of trial. As soon as the Commonwealth made the defense counsel aware that their sole fresh complaint witness would be the alleged victim's mother, any person would have logically determined that Officer Gomsey would not be the prosecution's fresh complaint witness. The trial court had already limited the

Commonwealth to one fresh complaint witness. This fact in turn leads to the conclusion that the Commonwealth could not call Officer Gomsey as a witness as she did not perceive the alleged incidents and could have only testified as to hearsay under the fresh complaint exception. Therefore, only the defense could have called her as a witness and for the limited purpose of impeaching the alleged victim with the prior inconsistent statements.

Moreover, by the end of the first day of trial, defense counsel had knowledge of the crucial benefit of calling Officer Gomsey as a witness. He knew of the inconsistency between the alleged victim's testimony at trial and her statement to Officer Gomsey. By the defense lawyer's own admission, the failure to call Officer Gomsey did not result from a strategic consideration. To the contrary, the defense counsel's strategy included calling Officer Gomsey to impeach the alleged victim by introducing the prior inconsistent statements. He spent significant time in his cross-examination focusing on the inconsistencies. The alleged victim denied making several of the statements in Officer Gomsey's report on cross-examination. Calling Officer Gomsey to testify remained the only way that the defense counsel could accomplish his impeachment of the alleged victim. In order to do that, he would have to serve Officer Gomsey with a subpoena. And that he did not do. In short, the defense counsel's inattention fell measurably below that which the Court might expect from an ordinary fallible attorney.

The defense counsel's serious inattention and incompetency in failing to serve Officer Gomsey with a subpoena by the end of the first day of trial meet the federal standards under *Strickland* as well. First, the oversight clearly demonstrates the deficiency of the defense counsel's performance. The defense counsel himself admitted

in his offer of proof and request for a continuance that calling Officer Gomsey as a witness was part of his defense strategy. He meant to present her testimony but took it for granted that she would be waiting around to testify for the prosecution. Not only it was deficient performance to leave the availability of a witness to chance, defense counsel's hope that Officer Gomsey would be available without any effort on his part was manifestly unreasonable considering the trial judge's ruling and the proceeding of the first day.

Second, the defense counsel's deficient performance has adversely prejudiced Mr. Malone, denying him a fair trial. The outcome of the trial might have well been different had the defense lawyer presented the prior inconsistent statements of the alleged victim through Officer Gomsey. The case essentially rested on the alleged victim's testimony, which the jury obviously credited. In doing so, the jury must have discredited Mr. Malone's denial of the allegations. Had the defense counsel introduced the prior inconsistent statements and undermined the credibility of the alleged victim, he could have raised reasonable doubt as to Mr. Malone's guilt. Given the obvious inconsistencies between the alleged victim's trial testimony and statement to Officer Gomsey regarding various incidents and the requirement of unanimity, the jury could have decided to cling to the presumption of innocence.

By failing to secure the attendance of Officer Gomsey, the defense lawyer left the jury free to believe the alleged victim's unchallenged account. In addition, in his cross-examination of the alleged victim, the defense lawyer primed the jury to hear the inconsistent statements she had made to Officer Gomsey. The jury likely concluded he could not have fulfilled his promise when no such evidence surfaced by the close of all of

the evidence. *See Harris v. Reed*, 894 F.2d 871 (7th Cir. 1990)(noting the importance of fulfilling a promise made in opening).  The complete absence of corroborative physical, scientific, or eyewitness evidence magnifies the detrimental consequence of the failure to undermine the credibility of the alleged victim.

Furthermore, the defense attorney's failure to call Officer Gomsey, in and of itself, violated Mr. Malone's right to effective assistance of counsel.  Although in Mr. Malone's case the defense lawyer did not make a decision not to call Officer Gomsey, his failure to subpoena her resulted in his inability to call her as a witness. Officer Gomsey was not only a key witness but also a necessary witness. A "necessary" witness is one whose testimony is relevant, material and not cumulative. *See U.S. v. Simpson*, 992 F.2d 1224, 1230 (D.C. Cir.), cert. denied, 510 U.S. 906 (1993). Her testimony would have carried significant weight as she had no motive to favor the defense. Had she testified, she could have substantially weakened the Commonwealth's case.  In short, the defense lawyer's conduct deprived Mr. Malone of his right to effective assistance of counsel and due process.

**POINT TWO**

**JURISTS OF REASON WOULD FIND DEBATABLE THE DISTRICT COURT'S RULING THAT MALONE HAD NOT SHOWN THAT THE TRIAL COURT VIOLATED HIS RIGHT TO COUNSEL AND DUE PROCESS BY DENYING HIM A SHORT CONTINUANCE TO SECURE A NECESSARY WITNESS**

The trial court's refusal to grant the defense lawyer's request for a short continuance violated Mr. Malone's right to due process.  The trial court also denied Mr. Malone the right to counsel when it denied his attorney a very short continuance to serve a necessary witness with a subpoena to compel her presence to testify on Mr. Malone's

behalf. The Sixth and Fourteenth Amendments to the United States Constitution afford a defendant the right to assistance of counsel in all State criminal prosecutions which may result in the loss of the defendant's liberty. *Argersinger v. Hamlin*, 407 U.S. 25 (1972); *Gideon v. Wainwright*, 372 U.S. 335 (1963). Counsel for a defendant must be afforded " a reasonable opportunity to prepare and to present the defence." *Lindsey v. Commonwealth*, 331 Mass. 1, 2 (1954). *See also Commonwealth v. Brant*, 346 Mass. 202 (1963).

While the granting of a continuance rests in the sound discretion of the trial judge, such discretion cannot be exercised in such a way as to impair the constitutional right to have counsel who has had reasonable opportunity to prepare a defense. *See Chandler v. Fretag*, 348 U.S. 3 (1954). "A district court's denial of a continuance is reviewed under the deferential abuse of discretion standard." *United States v. Perez-Ruiz*, 353 F.3d 1, 8 (1st Cir. 2003). It is settled law that "[A]n unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay' constitutes an abuse of that discretion." *United States v. Saccoccia*, 58 F.3d 754, 770 (1st Cir. 1995) (*quoting Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)).

In Mr. Malone's case, his defense counsel requested additional time to have Officer Gomsey served at the close of evidence. The record demonstrates that both the trial judge and the defense lawyer recognized the plain oversight and the adverse effect of the defense counsel's failure to subpoena Officer Gomsey.2 But the trial judge refused to

---

[2] It was not until the start of the second day of trial that the defense lawyer realized that he committed a fatal error in not serving officer Gomsey with a subpoena. A. 35-37. The defense counsel stated AI did not pursue a subpoena on Officer Gomsey because I assumed the Commonwealth would be putting her on in the case-in-chief.@ *Id.* He then requested time to serve Officer Gomsey at the close of the Commonwealth's case. *Id.* The trial judge determined that at the end of the previous day's trial, the defense lawyer should have known that Officer Gomsey would not, in fact, be called to testify for

allow the defense attorney's request on the grounds that, by the end of the previous day, defense counsel should have known that the Commonwealth would not call Officer Gomsey as a witness. As a witness, Officer Gomsey would have provided damaging testimony against the Commonwealth's key witness: the alleged victim. This case turned on the credibility of the alleged victim. The testimony of Officer Gomsey had the surety of significantly undermining the alleged victim's credibility, tipping the scale in Mr. Malone's favor. Thus, the defense attorney based his request for a short continuance on the necessity to ensure that the interests of justice were served.

The need for additional time clearly outweighed any possible adverse effects that might have resulted from granting the short continuance. The Commonwealth did not object to the continuance. The trial only lasted two days and the task the defense lawyer sought to accomplish could have been completed within one or two hours. The continuance would have added, at most, one day to the trial. The continuance also would not have prejudiced the Commonwealth, as the prosecution anticipated prior to the trial date that Officer Gomsey might testify in Mr. Malone's case.  By refusing to grant a short recess, the trial judge effectively denied Mr. Malone's attorney the opportunity to undermine the credibility of the only percipient witness in a case where the Commonwealth presented no eyewitness corroboration, and no physical or scientific evidence. Under the circumstances, the trial judge had a duty to accord due deference to a

---

the Commonwealth. *Id.*  The judge stated A[I]t was apparent to me by the end of court last night that they weren't going to use her (Officer Gomsey). You asked her (Assistant District Attorney) on the Record if this was going to be her Fresh Complaint witness and she answered straight back, Yes, it is, and I had ruled there would only be one Fresh Complaint witness. So the case goes on. . . . I think you had ample warning if you wanted to summons her.@  A. 36-37.

defendant's Constitutional rights to counsel and due process. In sum, the refusal to grant a short continuance constituted and abuse of discretion and a denial of Mr. Malone's constitutional rights to counsel and due process.

## CONCLUSION

Malonehas raised serious claims of ineffective assistance of counsel denial of due process and right to counsel.  Moreover, jurists of reason would find the District Court's rulings debatable in numerous respects. The Court should issue a Certificate of Appealability so that the Court's ruling can be reviewed on appeal.

Respectfully submitted
Petitioner's Attorney,

*/s/ Derege B. Demissie*
DEREGE B. DEMISSIE
DEMISSIE & CHURCH
929 Massachusetts Ave., Suite 01
Cambridge, MA 02139
Ph: (617) 354-3944
Fax: (617) 354-0985

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 14, 2007.

*/s/ Derege B. Demissie*
DEREGE B. DEMISSIE